Good morning, Mr. Thiel. Mr. Thiel and Ms. Barrickson-Cedars, on behalf of the Dean and Dr. Arnn. Your Honor, this is an appeal under 49 U.S.C. 44709 from the full board of the National Transportation Safety Board at a dismissal of a pilot's challenge to the suspension of her pilot's license. The suspension is permanently reportable, and I think all parties agree to that, out of the pilot records database found under 49 U.S.C. 44703. Now, the FAA suspended the pilot's license because she did not present her original logbooks and training certificates to an FAA inspector in Lincoln, Nebraska, in response to a letter he mailed as part of an investigation into two trips in which Airman McNaught may or may not have been a necessary crew member. The letter did not specify a time, place, or manner of the production. It merely requested a phone call to arrange an inspection. Now, Airman McNaught did not receive the letter. She was in Dubai when it was sent. However, a phone call did take place when the inspector that was investigating this matter, Aviation Safety Inspector Marchese, found Airman McNaught's phone number among the records that the FAA already had at its disposal, what's known as a blue-ribbon medical file, a blue-ribbon Airman file. He used that number to call Airman McNaught, and rather than working with her, as he put it in his testimony, as he said he was prepared to do, he actually hung up on her, discontinuing the phone call, and essentially said that 10 days was what was required for her to produce these original records under threat of suspension. Airman McNaught, of course, being in Dubai, had informed Inspector Marchese that she was going to be there for several months in training for a typewriting certificate, was not able to produce original records that she did not even have with her within that 10-day window. When she returned to the United States, she was met with a suspension, and she appealed that suspension before an administrative law judge of the NTSB. Counsel, I thought she just had to make arrangements to make the records and logs available, not produce them within 10 days. Did I misread that? Your Honor, you're making an excellent point, and that's therein lies part of the problem with was that actually a request. One thing I don't think that the FAA can do in this case is point to what was a request, because we don't have any requests in the record for time, place, and manner of the production of the original training certificates and log books. What's undisputed is that's always what was requested, original documents, and the geographical constraints prohibited Airman MacDuff from being there. So either we have one of two scenarios, Your Honor, to answer your question. Either we have a request for in-person, because how else would one produce original documents other than in-person? So either we have a request for in-person presentation of those training certificates and log books within 10 days. The testimony is consistent from A.S. Einstein's Marchese that it was 10 days, and the geographic constraints did not change his definition or that requirement of 10 days. So either we have this unreasonable request that she drop everything from a foreign country, returning to the United States, within that 10-day window, and present those original documents, which request would have been ably and on its face unreasonable. So that's one scenario. Or as your question points out, Your Honor, we don't have any requests whatsoever. The only thing that can point to is we made an overture. We said we want you to appear and make the arrangements for that. Now, the phone call did take place, and so I don't think you misread it, Your Honor. The letter does not say, here, you'll do it, Lincoln, you'll do this, here's your deadline or anything along those lines. It does say we want you to make arrangements for it. That's not a request for the materials. All that letter did was define what was at issue, what the subject was. And Erwin Dodd has been consistent in saying that we don't have any objection to the subject of the request. It's clear that the FAA is entitled to insist on production of training certificates and loan books. However, they did not give any detail as to the time, place, and manner of production. So, Your Honor, I don't think you misread it. Counsel, let's talk about jurisdiction, but I need to understand the chronology of events first. Sure. My understanding is the request came in, then there was – and we can – again, I'm assuming that it's a request, but then the suspension occurred, then there was a challenge to the suspension, then the suspension was lifted by the administrative law judge, I think. Is that a correct chronology of events? And if I'm wrong, let me know. You'll forgive me, Your Honor, if I can't agree that there was a demand. I have to maintain that there was not a demand. Okay. Yeah. I'm going to assume we're assuming it for now. And one other – I hate to sound hyper-technical, but it's an important distinction – that the suspension was quote-unquote terminated. And that's a very important word to be used here because the statutes indicate that if it is quote-unquote withdrawn, that is – I understand all that. I just need to understand the chronology. The chronology is largely correct, Your Honor. So we have the letter that was sent April 21st of 2022. There was a phone call a couple weeks later. We have a letter of investigation. The emergency order of suspension is July 14th of 2022. That's – immediately upon the issuance of that suspension, the appeal is taken,  It's then that the termination – well, the complaint is filed, then there's a termination. I'm sorry, Your Honor. Does that answer your question? It does. And so I'm wondering how – I'm wondering – so it sounds to me like there was standing. I know you're going to agree with me. But the reason may be different than what you argued, which is that – or that the parties argued, which is that when the suit, when the administrative law judge originally had the case, the suspension was still in place. Am I understanding that correctly? You are correct, and I do agree with that, Your Honor. And I don't mind how we get there, but I do think that there's even a – there are other reasons why we should get there. What you just pointed out, Your Honor, does make our case even stronger. However, if we are to look at the permanent reportability of that suspension, then – Yeah, we're going to get into that in a second. I know you want to make the arguments you made, but I just want to understand if the chronology is. Now, where we're going to get into that next is on movements. So as you know, the NTSB said it was a move. True. And I think what you're going to argue is that there's collateral consequences here. That's the best one. I know you have two other arguments. I don't want to get into those. Voluntary cessation is the other one. True. But there's a case from the 11th Circuit that actually nobody – that I could find – is a case called Westmoreland v. NTSA. It's 833 F. 2nd, 1461. And it deals with a pilot's license being reinstated. And the claim was identical to yours, that her future employment – the future employment might be impaired if there was a disclosure that the pilot's license had been suspended. The court rejected the argument – and I'm actually quoting it here – saying that it was, quote, too speculative to create a cognizable interest in the outcome of this litigation. That the prospect of future employment having it disclosed is too speculative. That is the only case in the country I could find that was exactly as close as could be to this one. And I wonder if that's true here, which is we don't know whether your client is going to apply for employment. We don't know, if she does, whether they're going to have access to this pilot's database. And here there was a requirement of disclosure to whomever, you know, was a prospective employer. So I just wonder if a fortiori this Westmoreland analysis applies here. Well, it's embarrassing that I don't have that case in the brief, Your Honor, but that's why you're up there and I'm down here. And so one of many reasons. So not knowing the full details about the case. It's fair, yeah. So let me just say this. If we compare that at least with the Perline case where there was a 180-day suspension, that created a stigma. Now, I don't know why the Westmoreland case wouldn't talk about a stigma. But certainly since the PRD went into effect, and that could have been after the Westmoreland case, perhaps, because the PRD changed the Pilot Records Improvement Act. So where the information was farmed, it was kept in a repository. Now we have this mandatory disclosure. And it works in every different direction. We have employers that have a mandatory disclosure option. We have the FAA that is making these disclosures of anything other than a suspension or some specific action that isn't discharged. Okay? So it's possible that the timing there is what separates the Westmoreland case from what we're talking about now. I think that we would have a conflict between the Perline case and the Westmoreland case because if the word stigma isn't addressed in the Westmoreland case, then I would suspect that you can't reconcile those two decisions. I would submit that it's not an all-force, Your Honor, in this particular case because Ms. McNaught did look into specific jobs. And you'll see from the record her credentials are impressive. Her career has been in aviation, primarily as an educator, but also as an FAA inspector for a period of time. She teaches the best of the best how to fly. As she mentions, her typical student is an existing professional pilot, an airline transport pilot certificate holder. And so she knows these things inside and out. So when she says, listen, there are jobs that I am immediately precluded from holding, and here are some of them that I wanted to do, but those are foreclosed to me. Again, I suspect that those are different facts than what we have in the school. Did she apply or actually send out any inquiries? And the reason why I ask that, because then we get into the Lujan standing type stuff. And I know this isn't quite a standing case, but there's that requirement of having a definite intent to visit in the Lujan case. And the argument here would be you have to have a definite intent to apply, which might be an inquiry as to the openness of the job, what they would consider, an application, something like that. So we have these different ports, if you will, Judge.  You know, this is not a drive-by where they say, well, I'm just looking to try and trump up some type of lawsuit. I will tell you that the record does not have anything in it saying that she actually submitted an application. I think the closest you can get there, and keep in mind, Your Honor, mootness was not part of the issues that were addressed at trial. The other problem is that if you look at the trial record, the airline mcnaught was substantially handicapped in the type of evidence she was even allowed to put in. I think a read of the transcript will show we couldn't even make an offer of proof. It was apparent that the trial court did not understand what an offer of proof was. And so I can't tell you, Your Honor, if we were allowed to have given the evidence, here's what it would have shown. So we got very close to that with the evidence that we were able to put in. Didn't do it because, A, it's questionable what we would have been allowed to put in, and I can't show you what that is. But where the evidence does take us and bring us right up to it is she knew, based on her experience, she was foreclosed from certain jobs. And she said, but for that stigma, she would be applying for those jobs. There's no evidence that she actually did. Well, is it true that if she applies for a position later, that she will have to give consent for a prospective employer to have access to the PRD? The PRD access is mandatory. And so in order to apply for certain jobs, if she doesn't give consent and there is no check of the PRD. Okay, so that question is answered. So that gets me to the question of exactly what appears in this record. In other words, if someone makes an inquiry here and is granted access to this record with respect to the appellate or the petitioner, what will they see in this record? Being a pilot, I can answer that question. Unfortunately, it's not in the record. Okay. Now, it's interesting because the FAA's counsel builds. Let me just say this. What I'm getting at is it looks to me like what they're going to see is a dispute over production of information and that that was cleared up. And no information or findings that go to competence as an aviator. All else being equal, Your Honor, if you have two different candidates, one who had been suspended and that suspension was terminated and another who didn't have that, that person with that suspension, as Fort puts it, which was cleared up, is going to have that stigma and a handicap in that regard. I would say, Your Honor, it wasn't cleared up because this was not withdrawn. It was terminated. Okay. So that's always going to be there. It is a furloughing stigma that we're talking about. I see that there will be a limited amount of time yet. I'd like to reserve that as a pre-managed rebuttal. Thank you. Very well. Mr. Waringo. Good morning, Your Honor. Brett Waringo on behalf of the FAA. Please, the Court. Judge Shepard, to address your question about the suspension and the CRD. So, yes, what would be shown in the pilot records database would be essentially just an indication of what regulation had been violated, that there was approximately an 11-day suspension, and that the suspension was terminated. So if Ms. McNaught were to apply to a specific subset of entities that are regulated by the FAA and air carrier, which she's never worked for before and didn't express an intention to work for in the future, she would then have to give her consent, as you know, Your Honor, for that air carrier to look in the CRD. The CRD is not a publicly available database. It's not open. The FAA doesn't actually use it itself for anything. She would have to give that consent and, of course, could explain to the employer what exactly the dispute was that led to this 11-day suspension. To add to that, it wouldn't show this was a documentary dispute and not, for example, that she was drunk while flying or something like that. Would it show what the nature of the underlying dispute is? Absolutely, Your Honor, because it would show the regulation, which is 14 CFR 6151, which is the request for documents. That's what the regulation is about. And so that would be what would be displayed in the CRD were Ms. McNaught to apply for one of these jobs. Of course, if we're even talking about what the employer might do in reaction to seeing this, what we're getting into is a great deal of speculation about the actions of a third party. And the Supreme Court has talked about it in a clapper that if we're talking about a sort of attenuated chain of reasoning to establish standing, well, it's not going to be sufficient to show an injury for standing. Why did you go down there? So the NTSB said mootness, and the government comes back and says, no, it's standing. And why did you drop the mootness argument? Are you standing? Well, Your Honor, we think that, of course, standing is required in front of this court, and that Ms. McNaught lacks that standing. We are not adopting the NTSB's theory of mootness. I think there are aspects of the case that certainly are moot, such as, as Ms. McNaught has alluded to, the fact that even whether the FAA's request for these documents was reasonable, I do think that's moot. But what she was raising sort of below is this issue of, did I actually have the notice of the FAA's request? And that's kind of the merits of this entire case and what she's sort of trying to argue here. Well, the problem is mootness, as the Supreme Court has said. They've been a little less, they've cited this less often, this quote, but standing, mootness is standing in a time frame. And here, the problem I have with the FAA's argument is that there was standing at the time the, not judicial, but administrative proceedings were started. And so clearly before the judge, the first administrative law judge, there was standing. She said, well, I'm still suspended. I want the suspension terminated. And so it seems like this is not a standing issue. This is actually a standing in a time frame issue, a mootness issue. You once had standing. Now that standing is gone. The case is moot. Well, Your Honor, I do think that there's a time frame aspect of it. You know, in front of the administrative law judge, standing is actually conveyed by statute, of course. And so, you know, not because she was aggrieved by an order of the FAA, she could appeal that to this administrative law judge. Now, when she comes before this court, she now has to establish Article III standing. She has an independent burden to do so. And, you know, as the Supreme Court said in Lujan as well, that burden is going to have to be established in a manner based on where we are in the proceedings, right? So when she begins, pleadings are enough. Once she has gone through an entire hearing before an administrative law judge and has had the opportunity to present evidence sufficient to show she's been injured, well, then she has to establish that like any other fact for which she has the burden, which is a preponderance of evidence in front of the ALJ. So you're right, Judge Strauss, that, yes, the standing is kind of in a time frame. It is changing the way that we move along in the case. We are, of course, we're arguing from a perspective of standing, but I understand your previous point as well. And certainly we're not saying mootness is not – finding this as moot is not impossible. We just chose to focus on standing. Well, and it's a label. I mean, it's a label because if you adopt mootness as standing in a time frame, then it is sort of the underlying question as a question of standing. So I understand. I just wanted to be sure that I'm understanding it because the NTSB was pretty clear that they believed it was a mootness issue and not a standing issue. To move on to Judge Shepard's point earlier with opposing counsel, I'm just trying to figure out how speculative the injury is. And based on this record, opposing counsel says, well, she's already looked into other jobs. She's going to need another job. And so, therefore, this is going to harm her if there's two equally, you know, qualified candidates that are going to pick the one without the suspension. What's the government's answer to that? The government's answer is that's not in the record. And I heard opposing counsel say, but for the stigma of this, she would be applying for jobs. That is not in the record. Ms. McNaught was asked at hearing, how is this going to harm you? And what she said was, well, I'm interested possibly in applying for jobs to help the military. Did not get any indication of timelines. This is a sort of someday aspiration the Supreme Court has warned about. In addition, the military does not review the PRD. They can't. So to the extent that she gave any information in the record, it's about jobs to which the pilot records database doesn't apply. And employers can't even look in it. Ms. McNaught does have an extensive background as an educator and someone who trains other pilots. Those jobs also do not and cannot give you access to the PRD. So the harm here is just entirely speculative. I mean, she's never even said she wants to apply for one of these jobs. Much less that she is going to or that she refrained from doing so because of what's in the PRD, Your Honor. Well, what is the subset of potential employers that is required to review the database? So it's primarily air carriers, Your Honor. So these would be your major airlines, of course, but then charter carriers who are certificated by the FAA. Smaller charter carriers as well, for which Ms. McNaught has never worked for in the past and hasn't expressed a specific interest in working for in the future. There are also a few more niche applications of the PRD, but those are addressed in the FAA's brief. Has she ever held a position that would require referencing this database?  No. Instead, she has worked as an instructor, training other pilots, doing some other work, but primarily an instructor, which does not require an employer, like a flight school, for instance, does not need to come to query and can't query the pilot records database. I assume the regulations contain the definition of the term air carrier. Absolutely, Your Honor. That's in 14 C.I.R. 1.1. And then in that subset of positions, the potential employer is required to apply for access to the database? Correct, Your Honor. But the access can only be granted if the pilot grants consent. Is that correct? Exactly. And in this case, again, Ms. McNaught has not actually said she's going to apply to any of those. So is there anything in the record as to what perhaps the typical industry-wide reaction of a potential employer who is required to consult the database or review the database, but the pilot will not grant consent? Is there anything in the record that tells us what happens at that point? Well, Your Honor, if the pilot doesn't grant their consent, the employer hasn't reviewed the records, and so they would be unable to allow that pilot to begin service as a pilot for that air carrier. So certainly if she did not grant, if she applied for an air carrier, they then asked her, okay, give us your consent, and she did not grant that, then she would not be able to work for that employer. But again, to get there, I think we're getting into speculation about what she might do in the future and then what that employer might do upon seeing this 11-day suspension that was terminated by the FAA once she provided these documents to the FAA. Would it be in any way disqualifying for any of the potential air carriers to have had a suspension that was terminated after 11 days, or would that be speculation as to what the air carriers would do? What I'm really asking is, if she applies for a commercial job and grants access, would it be, oh, you have a suspension, you can't fly. You can't fly for us. Or is it still within the discretion of the air carrier to say, oh, we see the 11-day suspension. You can certainly fly with us. It wasn't related to, you know, pilot air or whatever. Well, it's not on the record, Your Honor, but the air carrier, of course, has discretion. The FAA doesn't say anything about what they have to do with this information. And again, because Ms. McNaughton has to give them this consent to apply, she's, of course, free to explain. This was a records issue. She can give her explanation regarding why she feels she didn't get notice of the request and proceed from there if she were to apply for one of these jobs. You know, so I do think that her claimed concrete injury from future employment opportunities, I think that that's very speculative. I will also note that the harm that was sort of raised by Ms. McNaughton in her reply brief, which is sort of a more kind of backed away from harm of future employment, said, well, perhaps I'm actually just injured by being in the FAA's database itself. That is not a harm that is actual or real, as the Supreme Court said in Spokeo v. Robbins. In Spokeo, there was a Fair Credit Reporting Act violation where there was some information like incorrect merit status. I believe the Supreme Court also compared it to having the wrong zip code in a database. You know, if this information is in a database and it's wrong, but it's not really affecting you in any way, that is actually not a harm sufficient for standing in front of this Court. This Court has even talked about that a bit in Heyer v. Vandervoorde, talking about the sort of abstract psychic harm of saying, well, there's information here that's wrong. I'm aggrieved by that. It's not really sufficient for standing either. How is this going to harm for future employment opportunities? She hasn't done that. That was her burden at a hearing. She had to take a full opportunity to do that and didn't do so. I just want to ask one question about that. We talked about the record. I want to understand, too, the procedural history, because this could affect the jurisdictional analysis now that I think about it. Was this a case where there was an appeal from the NTSB to us, some sort of you could file an appeal in the Court of Appeals? Or is this, I'm upset by what the NTSB did, and now I'm filing an independent action in the Federal Court. I'm just wondering about the difference between the two there. Well, no, it's not an independent action, Your Honors. By statute, Ms. McNaughton may appeal to the Court of Appeals from a decision by the full National Transportation Safety Board. Nevertheless, she does, of course, have to establish her Article III standing. No, I understand that. I was just wondering, because we're talking about a record, and if this was an independent action, I'm wondering why McNaughton didn't create a record. But if this started with an administrative law judge, then, of course, there'll be different rules that'll apply in an administrative proceeding. Yes, Your Honor. And, you know, what I want to stress is that she had the opportunity to establish that injury in front of the law judge. And, you know, Ms. McNaughton, in her reply group, I think, raised the sort of issue of what's going to happen with all these pilots who just can't challenge these actions. Well, these pilots have the opportunity to have a hearing, and Ms. McNaughton had a hearing in front of the administrative law judge. She could have established these facts. It was her burden to do so. She simply didn't do so. So I'm just confused about the procedure, too. I mean, was the issue in front of the ALJ, was the issue of standing or mootness in play at all? Well, mootness had been raised in front of the ALJ, Your Honor, by the FAA, because Ms. McNaughton, of course, had provided the documents that the FAA had requested when we terminated the suspension at that point. And the ALJ rejected that argument, right? Exactly, Your Honor. The ALJ said, well, Ms. McNaughton is actually challenging sort of notice, and therefore I'm going to find that this isn't moot. She's arguing that there's going to be this reportable initiative. So I'm just wondering why would she at that point supplement the record with kind of the standing sorts of facts, because the ALJ had already decided that issue. In other words, she would have to anticipate the board's ultimate decision and then the arguments that were made for the first time on appeal to this court. Or am I misreading how that played out? Well, I don't think that she has to anticipate the future decision, Your Honor. I think that she has to show that there's an ongoing case or controversy. I mean, the whole idea, of course, as you know, of standing, is that she's got to show she's still injured coming before this court to establish her standing before this court. But she stepped with the record below, as Judge Strauss, I think, highlighted. So, you know, that was really, once the ALJ made his or her decision there, that was a merits hearing, right? I'm just thinking if I was counsel there, I'm not sure I would have been talking about or eliciting testimony about your future plans. I would have been arguing about the reasonableness of the FAA's activities. Maybe, you know, it's an unfamiliar process to me that this is. Well, Your Honor, I think that, you know, to show that she has to think. So Ms. McGahn actually did talk about potential future injury. I mean, and so she did have that opportunity. I do think that, you know, just to show that there's some sort of ongoing case, regardless of whether she can anticipate this or not, this appeal, she has to show, you know, what are we even arguing about here? And so that was something that was disputed and that she testified to in the record below. So she did have the opportunity to develop that, Your Honor. We're not attempting to blindside her with her appeal, but she has to show coming to this court there is an ongoing case here, for Your Honor, to decide that we'll give you jurisdiction. One additional question, if I may. Sure. So following up on that, my understanding, too, is in addition to talking about our future intentions, that the ALJ actually sort of assumed without deciding, and correct me if I'm wrong, sort of said, well, I'm going to assume that there is an ongoing injury here, and then went out and addressed the merits. And then my understanding is the NTSB came back and said, oh, no, you can't sort of assume jurisdiction, or at least that's the – I think that's the overall end. So we're going to say the case is – am I understanding that right? You are understanding that correctly, Your Honor. The ALJ said, well, she's raised this issue of potential future harm. I'm going to give her the benefit of the doubt, I think, and raise exact words while we're hearing about this notice issue on the merits. Then when the NTSB reviewed it, they decided it was moot. Now, I will say what they focused on in their decision. Again, the FAA didn't adopt that theory, but the NTSB was saying, and even indicate this in their opinion, they say, well, she doesn't seem like she's aggrieved anymore by the FAA's order of suspension at this point, which has been terminated, so we're going to find that that's moot. And that was the basis of the NTSB's decision. I see my time has expired, so if there are no more decisions – excuse me, questions, we would respectfully request that the Court deny the petition. Thank you, Counsel. Thank you, Your Honors. You know, what's interesting, Your Honors, is that the FAA had this temporary suspension under the emergency provisions. In order to do that, they have to show that there's a substantial harm or possible harm to the flying public, and therefore that this airman needs to be immediately taken out of circulation. And now that position has morphed into, eh, it's just a records-keeping dispute. It's really not that big a deal. And she can go and dispute that if she likes. And only a certain number of people are going to have access to that. Well, untrue. The NTSB decision is a publicly released decision. All the world can see that she was suspended. All the world can see why she was suspended, with or without the PRD. And at trial, she did testify that there are jobs that she was interested, and she didn't use the word but for, but it certainly, the nexus is there. There are at least two jobs that, based on her experience she was familiar with, where a suspension was immediately disqualified. Doesn't matter if it's a PRD or not. And so these questionnaires, when someone says, have you ever been revoked or suspended or had a certificate action, her option is either to lie or to check that box. With that being said, we would ask the court reverse remand with instructions to the NTSB. Thank you, Your Honor. All right. Thank you, counsel. We appreciate your arguments this morning. The case is submitted, and the court will render a decision as soon as possible. And with that, I'm going to stand aside. Thank you, Your Honor. Ms. McKee, would you call our next case? Yes, Your Honor.